**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES COMMODITY FUTURES TRADING COMMISSION,** ) ) ) ) | |
| | Civil Action No. _____ |
| **Plaintiff,** ) ) | |
| **v.** ) ) | |
| **PARAGON FX ENTERPRISES, LLC,** ) **a New York limited liability company,** ) ) | COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND CIVIL MONETARY PENALTIES UNDER THE COMMODITY |
| **Defendant.** ) | EXCHANGE ACT |
| ) ) ) | |

Plaintiff, the United States Commodity Futures Trading Commission ("Commission" or "CFTC"), by its attorneys, alleges as follows:

## I. SUMMARY

1.     Beginning on October 18, 2010 and continuing to approximately December 13, 2010 (the "relevant period"), Paragon FX Enterprises, LLC ("Paragon FX" or "Defendant"), through its officers, employees or agents, while acting as a retail foreign exchange dealer ("RFED"), solicited and accepted orders from non-Eligible Contract Participants ("ECPs") in connection with retail, leveraged off-exchange foreign currency ("forex") transactions without registering with the Commission, in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Commodity Exchange Act (the "Act"), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Commission Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011).

1

2.      By virtue of this conduct and the further conduct described herein, Defendant has engaged, is engaging, or is about to engage in acts and practices in violation of the Act, as amended by the CRA, and the Commission Regulations.

3.      Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), and Section 2(c)(2) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2), the Commission brings this action to enjoin Defendant's unlawful acts and practices and to compel its compliance with the Act and the Commission Regulations and to further enjoin Defendant from engaging in certain commodity or forex-related activity, including, through its website, soliciting customers or offering to be the counterparty to customers' forex transactions, without appropriate registration with the Commission.

4.      In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

5.      Unless restrained and enjoined by this Court, Defendant likely will continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.     JURISDICTION AND VENUE

6.      The Commodity Exchange Act establishes a comprehensive system for regulating registrants pursuant to the Act.  Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), authorizes the Commission to seek injunctive and other relief against any person or entity whenever it shall appear to the Commission that such person or entity has engaged, is engaging, or is about to

2

engage in any act or practice constituting a violation of any provision of the Act or any Commission rule, regulation, or order.

  7.  This Court has jurisdiction over this matter as alleged herein pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), and Section 2(c)(2)(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C).  During the relevant period, Paragon FX entered into leveraged forex transactions with two entities that were not ECPs, as well as with one or more individuals who were not ECPs.  Consequently, Section 2(c)(2)(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C), applies to the agreements, contracts, or transactions offered or entered into by Paragon FX.

  8.  Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), because Defendant transacts or has transacted business, among other places, in this District, and the acts and practices in violation of the Act are occurring or have occurred, among other places, within this District.

### III.  PARTIES

  9.  Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the responsibility for administering and enforcing the provisions of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 1 *et seq*., and the Commission Regulations thereunder, 17 C.F.R. §§ 1.1 *et seq*.  The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

  10.  Defendant **Paragon FX Enterprises, LLC** is a domestic limited liability company with its principal place of business located at 140 Broadway, Suite 4609, New York, New York 10005.  Paragon FX was registered as a domestic limited liability company with the

3

State of New York on March 10, 2010, in Kings County. Paragon FX has never been registered with the Commission or the National Futures Association in any capacity.

## IV.    OTHER RELEVANT ENTITIES

11.    **International Commodity Advisors** ("ICA") is a Georgia corporation with its principal place of business in Marietta, Georgia. ICA registered with the Commission as a Commodity Trading Advisor ("CTA") in April 2010. During the relevant period, ICA managed and traded clients' funds in retail, leveraged forex transactions and operated a forex pooled investment vehicle named ICA Forex CP I LP ("ICA Forex Pool").

12.    **ProfitStars Intl, Corp** ("PSI") is a Texas corporation with its principal place of business in Dallas, Texas. PSI registered with the Commission as a CTA in August 2010 and as a commodity pool operator ("CPO") of a forex commodity pool named "Profitstars" in October 2010. From October 28, 2010 to approximately December 13, 2010, PSI opened an account at Paragon FX and traded leveraged forex contracts opposite Paragon FX.

13.    **A&J Capital Management** is a company related to PSI. Prior to the formation of PSI, A&J Capital Management traded individually managed accounts at Paragon FX for many of PSI's customers. A&J Capital Management has never been registered with the Commission in any capacity.

14.    **Tracy Spaeth** is an individual residing in Lubbock, Texas. Spaeth worked as an investment advisor with a broker dealer named Brokers Xpress LLC. Spaeth is also the owner and operator of a company named Uncommon Wealth Management, an investment advisory service. Spaeth has never been registered with the Commission in any capacity.

15.    **Joey Miller** is an individual residing, on information and belief, in Lake Mary, Florida. Miller is the principal of A&J Capital Management and owner and operator of a

4

company named Traders Edge Live. Miller offers forex trading and financial seminars. Miller has never been registered with the Commission in any capacity.

## V.     **STATUTORY BACKGROUND**

16.     On October 18, 2010, the Commission new regulations became effective implementing certain provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, Title VII, §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010) and CRA, with respect to off-exchange forex transactions. Pursuant to Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), an entity must be registered in order to solicit or accept orders from a non-ECP in connection with forex transactions as a retail foreign exchange dealer ("RFED") or futures commission merchant.

17.     Commission Regulation 5.1(h)(1), 17 C.F.R. § 5.1(h)(1) (2011), defines an RFED for purposes of Part 5 of the Commission's regulations relating to off-exchange foreign currency transactions as "any person that is, or that offers to be, the counterparty to a retail forex transaction, except for a person described in sub-paragraph (aa), (bb), (cc)(AA), (dd), (ee) or (ff) of section 2(c)(2)(B)(i)(II) of the Act." These exceptions pertain to certain financial institutions, brokers and dealers registered under the Securities Exchange Act of 1934 and associated persons thereof, futures commission merchants and affiliated persons thereof, financial holding companies, and investment bank holding companies, and do not apply to Paragon FX.

18.     Commission Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011), requires any person acting as an RFED, as defined by Regulation 5.1(h)(1), to be registered as such, as of October 18, 2010.

19.     For the purposes of trading forex, a "commodity pool operator" is defined in
Commission Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2011), as any person who operates or
solicits funds, securities or property for a pooled investment vehicle that is not an ECP as defined
in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a, and that engages in retail
forex transactions.

20.     Section 1(a)(12) of the Act, as amended, to be codified at 7 U.S.C. § 1a(12),
defines an ECP, in relevant part, as:

a) "a commodity pool that (I) has total assets exceeding $5,000,000; and (II) is formed
and operated by a person subject to regulation under [the] Act," Section 1(a)(12)(A)(iv)
of the Act, to be codified at 7 U.S.C. § 1a(12)(A)(iv);"

b) "a corporation, partnership, proprietorship, organization, trust, or other entity – that
has total assets exceeding $10,000,000," Section 1a(12)(A)(v)(I) of the Act, to be
codified at 7 U.S.C. § 1a(12)(A)(v)(I); and

c) "an individual who has total assets in an amount in excess of (I) $10,000,000, or
(II) $5,000,000, and who enters into an agreement, contract, or transaction in order to
manage the risk associated with an asset owned or liability incurred, or reasonably likely
to be owned or incurred, by the individual," Section 1a(12)(A)(xi) of the Act, to be
codified at 7 U.S.C. § 1a(12)(A)(xi).

21.     Commission Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2011), requires any
person or entity acting as a CPO as defined by Commission Regulation 5.1(d)(1), 17 C.F.R.
§ 5.1(d)(1) (2011), to be registered as such.

## VI.   FACTS

### A. The ICA Forex Pool Account at Paragon FX

22.     During the relevant period, ICA managed and traded clients' funds in retail, leveraged forex transactions and operated a forex pooled investment vehicle named ICA Forex CP I LP ("ICA Forex Pool").

23.     ICA never registered as required under the Act as a CPO, nor did it ever file a notice of exemption with NFA claiming an exemption from registration as a CPO pursuant to Commission Regulation 4.13 or otherwise, as required by Commission Regulation 4.13(b)(1), 17 C.F.R. § 4.13(b)(1) (2011).

24.     During the relevant period, Paragon FX acted as an RFED by offering leveraged forex transactions to the ICA Forex Pool, or by entering into leveraged forex transactions with the ICA Forex Pool, which neither resulted in delivery within two days nor created an enforceable obligation to deliver between a buyer and a seller who had the ability to deliver and accept delivery, respectively, in connection with their line of business.  Rather, these forex transactions remained open from day to day and ultimately were offset.

### B. The PSI Account at Paragon FX

25.     On October 12, 2010, six days before the Commission's Regulations regarding retail forex became effective, PSI registered as a CPO of a forex commodity pool named "Profitstars" with NFA.  Although the Profitstars pool was incorporated purportedly in the state of Texas, the Texas Secretary of State has no corporate formation records for the Profitstars pool, and in fact PSI never created a pool named "Profitstars" as a legally cognizable entity.

26.     PSI, through its agents, had Profitstars pool participants sign a "Confidential Private Placement Memorandum" ("PPM").  The PPM purported to create a limited partnership

agreement with PSI as the general partner, PSI's principal, Ulysis Starling, as the managing director of "Profit Stars, Inc," and the Profitstars pool participants as limited partners. No such limited partnership agreement actually came into existence during the relevant period, because PSI did not register the limited partnership with the State of Texas, as required by Texas law. During the relevant period, PSI failed to operate the Profitstars pool as a legal entity separate from itself.

27.     On October 28, 2010, Starling opened a forex account at Paragon FX listing the "commodity pool" as PSI, and referring to his title as "General Partner." Defendant Starling signed the account opening documents with Paragon FX dated October 28, 2010, and an "attestation of eligible contract participant status" stating that PSI was a (i) commodity pool with greater than $5 million in total assets formed and operated by a person or entity properly registered as a CPO, as well as (ii) an entity with greater than $10 million in total assets. Since October 28, 2010, Paragon FX has been acting as a counterparty, or has been offering to act as a counterparty, to leveraged retail forex transactions with PSI, using the Profitstars pool funds. During the relevant period, PSI did not meet the commodity pool definition of an ECP because it was a CPO rather than a commodity pool. Moreover, during the relevant period PSI did not meet the corporation definition of an ECP because it did not hold assets in excess of $10 million.

28.     On October 13, 2010, PSI, through its principal Ulysis Starling, filed for an exemption with NFA from certain Commission Regulation Part 4 requirements pursuant to Commission Regulation 4.7(b), 17 C.F.R. § 4.7(b) (2011). Under Commission Regulation 4.7(b), qualified CPOs who offer or sell participations in a pool solely to Qualified Eligible Persons ("QEPs") may claim relief from certain Part 4 disclosure requirements, including the

delivery of an approved Disclosure Document that conformed to Commission Regulation 4.21.

PSI, through its principal Ulysis Starling, listed "Profitstars" as the exempt commodity pool.

29.     PSI's records, many if not all of which were also in the possession of Paragon FX,

show that a significant number of the Profitstars pool participants did not meet the QEP

requirements set forth in Commission Regulation 4.7(a), 17 C.F.R. § 4.7(a) (2011). Therefore,

PSI was not entitled to claim an exemption under Commission Regulation 4.7(b). From October

28, 2010, to approximately December 13, 2010, Paragon FX acted as an RFED by offering

leveraged forex transactions to PSI, or by entering into leveraged forex transactions with PSI,

which neither resulted in delivery within two days nor created an enforceable obligation to

deliver between a buyer and a seller who had the ability to deliver and accept delivery,

respectively, in connection with their line of business. Rather, these forex transactions remained

open from day to day and ultimately were offset.

## C.  Paragon FX Conduct as Forex Counterparty With Certain Retail Customers From October 18, 2010 to October 28, 2010

30.     During the period from at least August 2010 to at least December 13, 2010, Tracy

Spaeth ("Spaeth") of Uncommon Wealth Management and Joey Miller ("Miller") of A&J

Capital Management (AJCM) and Traders Edge Live directly and indirectly solicited members of

the public to invest in off-exchange forex trading. Spaeth and Miller solicited members of the

public to open forex trading accounts at AJCM by, among other things, holding financial

seminars and meetings. Joey Miller also solicited customers through recorded video seminars on

forex trading. As a result of these solicitations, a number of clients opened accounts at AJCM

during, approximately, August and September 2010. AJCM opened a "master" account at

Paragon FX to manage all the individual clients' accounts under a so-called "Percentage Asset

9

Allocation Method." AJCM then forwarded clients' funds to Paragon FX, where AJCM managed and traded individual clients' forex sub-accounts under the AJCM master account.

31.     In early October 2010, as PSI was about to become registered as a CPO, Spaeth and/or Miller contacted clients who had AJCM-managed forex accounts at Paragon FX, and represented to such clients that PSI was becoming registered as a CPO and the clients had to transfer their forex accounts from AJCM to PSI "so that we can maintain the same feature set that we currently have." Spaeth and/or Miller advised AJCM clients to execute subscription documents which authorized the transfer of forex funds being held and traded at Paragon FX from AJCM's management and control, to PSI's management and control as the CPO of the Profitstars pool. Some AJCM clients signed such a subscription agreement prior to October 18, 2010.

32.     From October 18, 2010 to October 28, 2010, PSI, through its agents, managed and traded funds of certain former AJCM clients, who had signed subscription agreements transferring control of their funds to PSI, in their individual forex sub-accounts at Paragon FX under the master account that had been previously managed and traded by AJCM. During this period of time, the "master account" at Paragon FX, although managed and traded by PSI, was still captioned under the name of AJCM.

33.     One or more of these individual former AJCM clients who signed subscription agreements transferring control of their funds to PSI, and whose funds were managed and traded by PSI at Paragon FX from October 18, 2010 to October 28, 2010, were not ECPs.

34.     From October 18, 2010, to October 28, 2010, Paragon FX acted as an RFED by offering leveraged forex transactions to, or by entering into leveraged forex transactions with, non-ECP individual clients of either AJCM or PSI, in sub-accounts at Paragon FX. These

10

clients' sub-accounts were managed and traded by PSI under a Paragon FX master account still

captioned under the name of AJCM.   These leveraged retail forex transactions neither resulted in

delivery within two days nor created an enforceable obligation to deliver between a buyer and a

seller who had the ability to deliver and accept delivery, respectively, in connection with their

line of business.   Rather, these forex transactions remained open from day to day and ultimately

were offset.

### D. The Status of Paragon FX and the Method of Trading Forex at Paragon FX

35.     Paragon FX is not a financial institution, registered broker dealer (or their

associated persons), insurance company, financial holding company, or investment bank holding

company, as defined in Section 2(c)(2)(B)(II)(aa)-(bb), (dd)-(ff) of the Act, as amended, to be

codified at 7 U.S.C. § 2(c)(2)(B)(II)(aa)-(bb), (dd)-(ff).

36.     The forex trading of AJCM or PSI clients' funds from October 18, 2010 to

October 28, 2010, and the subsequent forex trading of the ICA Forex Pool and PSI at Paragon

FX, took place under a Percentage Asset Allocation Method ("PAAM"), with each client or

participant receiving a proportional share of the amount of, and the gains and losses from, an

aggregate forex transaction that occurred in master accounts in the names of AJCM, the ICA

Forex Pool, or PSI.

## VII.    VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND THE COMMISSION'S REGULATIONS

### COUNT ONE:
### VIOLATION OF SECTION 2(c)(2)(C)(iii)(I)(aa) OF THE ACT, AS AMENDED, AND COMMISSION REGULATION 5.3(a)(6)(i)
### FAILURE TO REGISTER AS A RETAIL FOREIGN EXCHANGE DEALER

37.     The allegations of paragraphs 1 through 36 are realleged and incorporated herein

by reference.

11

38.     During the relevant period, Paragon FX acted as an RFED, as defined in Commission Regulation 5.1(h)(1), 17 C.F.R. § 5.1(h)(1) (2011), and failed to register as an RFED, in violation of Commission Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011).

39.     During the relevant period, Paragon FX solicited or accepted orders from non-ECPs in connection with forex transactions as an RFED.  Paragon FX engaged in this conduct without being registered as an RFED, as required by Commission Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011), in violation of Section 2(c)(2)(c)(iii)(I)(aa) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2)(c)(iii)(I)(aa).

40.     At all relevant times, the acts, omissions and failures described herein were committed by officers, employees or agents of Paragon FX acting within the scope of their employment or agency with Paragon FX; therefore, Paragon FX is liable under Section 2(a)(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(a)(1)(B), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2011) for such acts, omissions and failures in violation of the Act and Commission Regulations.

41.     Each day since October 18, 2010 that Paragon FX engaged in this conduct and failed to register as an RFED with the Commission is alleged as a separate and distinct violation of Section 2(c)(2)(c)(iii)(I)(aa) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2)(c)(iii)(I)(aa), and Commission Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011).

## VIII.     RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), and pursuant to the Court's own equitable powers, enter:

12

a) An order finding that Paragon FX violated Section 2(c)(2)(c)(iii)(I)(aa) of the Act, as amended by the CRA and the Dodd-Frank Act, to be codified at 7 U.S.C. § 2(c)(2)(c)(iii)(I)(aa);

b) An order finding that Paragon FX violated Commission Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011);

c) An order of permanent injunction prohibiting Paragon FX, and any of its agents, servants, employees, assigns, attorneys, and persons in active concert or participation with Paragon FX, including any successors thereof, from engaging, directly or indirectly:

  (i)   in conduct in violation of Section 2(c)(2)(c)(iii)(I)(aa) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2)(c)(iii)(I)(aa);

  (ii)  in conduct in violation of Commission Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011);

  (iii) trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a);

  (iv)  entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Commission Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2011)) ("commodity options"), swaps, and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts"), for their own personal account or for any account in which they have a direct or indirect interest;

(v)     having any commodity futures, options on commodity futures, commodity options, swaps, and/or forex contracts traded on their behalf;

(vi)    controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, swaps, and/or forex contracts;

(vii)   soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, swaps, and/or forex contracts;

(viii)  applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011); and

(ix)    acting as a principal (as that term is defined in Commission Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011)), agent, or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011).

d)  An order requiring Paragon FX and any successors thereof, to disgorge to any officer appointed or directed by the Court all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or

indirectly, from the acts or practices which constitute violations of the Act, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

e) An order requiring Paragon FX to make full restitution to every person or entity whose funds it received or caused another person or entity to receive as a result of the acts and practices which constitute violations of the Act, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

f) An order directing Paragon FX and any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between it and any of the participants whose funds were received by it as a result of the acts and practices which constitute violations of the Act, as described herein;

g) An order requiring Paragon FX to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the higher of: (1) $140,000 for each violation committed on or after October 23, 2008; or (2) triple the monetary gain to Defendant for each violation of the Act, as amended, and the Regulations;

h) An order requiring Paragon FX to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2006); and

i)   An Order providing such other and further relief as this Court may deem necessary and

appropriate under the circumstances.

Dated: _October 31_, 2011

                                     Respectfully submitted,

                                     ATTORNEYS FOR PLAINTIFF U.S.
COMMODITY FUTURES TRADING
COMMISSION

                                     Joseph Rosenberg
Trial Attorney
Division of Enforcement
Eastern Regional Office
140 Broadway, 19th Floor
New York, New York 10005
(646) 746-9765
(646) 746-9940 (facsimile)
jrosenberg@cftc.gov

                                     Peter M. Haas
Chief Trial Attorney
Division of Enforcement
1155 21st Street, N.W.
Washington, D.C. 20581
(202) 418-5377
(202) 418-5523 (facsimile)
phaas@cftc.gov

                                     Danielle E. Karst
Trial Attorney
Division of Enforcement
1155 21st Street, N.W.
Washington, D.C. 20581
(202) 418-6158
(202) 418-5523 (facsimile)
dkarst@cftc.gov

16